UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JADE TYLER OBENAUER,<br><br>Plaintiff,<br><br>vs.<br><br>KELLIE WASKO,[1] Former Secretary of Corrections, individual capacity; NICK LAMB, Secretary of Corrections, official capacity; TABITHA BENTING,[2] Warden, South Dakota State Penitentiary, individual and official capacity; MELISSA MATURAN, Secretary of the Warden's Office, Department of Corrections, individual and official capacity; CHRISTOPHER GOFF, Chief Medical Officer, Department of Corrections, individual and official capacity; STACY VIS, Health Services Administrator, Department of Corrections, individual and official capacity; DR. AARON HAYNES, DOC – Health Services/ Head of Gender Non-Conforming Committee, individual and official capacity; RYAN VANDERAA, Unit Captain, Unit B – Jameson Annex, Department of Corrections, individual and official capacity; JERAD TIMMERMAN, PREA Compliance Manager, Department of Corrections, individual and official capacity; SHELBY BLACK, Certified Nurse Practitioner (CNP), Department of Correction – Health Services, individual and official capacity; LANI KRUEGER, Health Services Secretary, Department of Corrections – Health Services, individual and official capacity,<br><br>Defendants. | 4:25-CV-04254-ECS<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

[1] Kellie Wasko is no longer the Secretary of Corrections. In accordance with Federal Rule of Civil Procedure 25(d), Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims.

[2] The Court notes that the correct spelling of this defendant's name is Tabatha Benting.

Plaintiff Jade Tyler Obenauer, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Obenauer moves for leave to proceed in forma pauperis and provided a prisoner trust account report. Doc. 5.

**I. Motion for Leave to Proceed In Forma Pauperis**

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Obenauer reports average monthly deposits of $124.83 and an average monthly balance of $11.91. Doc. 5 at 1. Based on the information contained in Obenauer's prisoner trust account, the Court grants Obenauer leave to proceed in forma pauperis and waives the initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay the filing fee, Obenauer must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The

statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Obenauer's institution. Obenauer remains responsible for the entire filing fee, as long as she is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II. 1915A Screening

### A. Factual Background as Alleged by Obenauer

The events giving rise to the current action occurred at the South Dakota State Penitentiary, Jameson Annex. Doc. 1 at 27. Obenauer's complaint centers around the medical treatment she has received for chronic migraines and gender dysphoria. See generally id.

#### 1. Facts Regarding Migraines

When Obenauer was a teenager, she "was diagnosed with chronic migraines." Id. at 12. According to Obenauer, her "medications were adjusted so many time[s] that [she] never had a steady course of treatment for [her] mental health disorders and many medical issues that [she] struggle[s] with." Id. These different medications and treatments include Tylenol, ibuprofen, Celebrex, Topamax, propranolol, sumatriptan, as well as "another-triptan[,]" but Obenauer states that these medications and treatments "all were deemed ineffective." Id. Obenauer states that these medications and treatments are reflected in her medical files and records at the South Dakota Department of Corrections (DOC) and Health Services. Id.

The provider that Obenauer has "mainly seen" for her migraines has been Dr. Rector, who referred Obenauer to an outside provider "for further testing and examination because all other attempts towards an effective course of treatment were all deemed ineffective." Id. Obenauer was seen at Avera Neurology by Dr. Wong for an initial assessment. Id. Dr. Wong examined Obenauer and ordered that Obenauer receive Botox injections every twelve weeks, that a sleep study be conducted, and that Obenauer receive an MRI. Id. Obenauer did receive a sleep study and discovered that she had sleep apnea. Id. An MRI was also conducted, but Obenauer claims that she "never heard back one way or another any results." Id. Obenauer was later informed by Health Services in the Jameson Annex that Botox was not approved by the DOC or Health Services. Id.

Obenauer claims that she waited six months before her second appointment with Avera Neurology, where she saw Dr. Lori Lawson via a telehealth visit. Id. Obenauer and Dr. Lawson discussed a different course of treatment, and Dr. Lawson ultimately ordered gabapentin. Id. Dr. Lawson informed Obenauer that the medication "would start at a lower dose and slowly increase[,]" and that if needed, could be increased to 600 milligrams taken three times daily. Id. While the DOC and Health Services approved Dr. Lawson's prescription for gabapentin, it was only approved for 600 milligrams to be taken twice daily. Id. Obenauer states that she followed this prescription regimen for six months until she was released from DOC custody and placed on parole in July of 2025. Id.

In July of 2025, Obenauer saw Dr. Lawson and Dr. Wong again, and they recommended that she slowly decrease her gabapentin prescription and begin Botox treatments because she was no longer incarcerated. Id. Obenauer later received her first session of Botox injections and was informed by Dr. Wong that while Obenauer may experience relief from her migraine symptoms

immediately, it may take a few Botox sessions for Obenauer to feel relief. Id. Obenauer's second session of Botox injections was scheduled for the beginning of September of 2025, but Obenauer was returned to DOC custody before her appointment. Id.

After Obenauer returned to Jameson Annex in late August of 2025, Provider Samatha Gottsleben completed an intake physical on August 27, 2025. Id. Gottsleben informed Obenauer that "the order for gabapentin would more than likely be denied[,]" but Obenauer states that Gottsleben nonetheless placed an order for gabapentin. Id. Additionally, Gottsleben prescribed "a month of tylonel [sic] and Ibuprofen, 4x daily[]" and re-ordered Obenauer's prescription for 100 milligrams of sumatriptan. Id. According to Obenauer, sumatriptan "has strict [p]harmaceutical restrictions" and is "not meant for daily relief of migraines." Id. at 12–13. Obenauer was informed in early September 2025 that her request for gabapentin was denied. Id. at 13.

Obenauer states that she suffers from migraines "on almost a daily basis at various times of the day" and that these migraines "are so severe at times it is hard to function with daily activities and is hard to get sleep at night." Id. She states that she has "already been prescribed everything the DOC had to treat this condition[,]" which is why she has been referred to an outside provider. Id. "Currently, the DOC has approved [Obenauer] for an appointment to be scheduled with Avera Neurology but the scheduling staff for the DOC refuse to schedule the appointment." Id. Obenauer states that she has "filed numerous complaints" and has "attempted to tell the nurses and housing staff that [she] need[s] to get this appointment scheduled . . . but after multiple months of waiting nothing has even been scheduled." Id.; see also Doc. 1-1 at 45.

Obenauer also states that the "DOC has made numerous statements of the requests, medications, and treatments being costly[,]" and "[t]hus, all treatments and medications have

been denied." Doc. 1 at 13. Obenauer's "main issue" is that she has not been able to receive a prescription for gabapentin – she claims "it was the only medication that was most effective in the past besides the Botox." Id.; see also Doc. 1-1 at 2, 5, 7.

After Obenauer filed her original complaint, she filed what she described as a "letter" to the Court, describing updates to her medications subsequent to the filing of her original complaint. Doc. 6. The Court liberally construes this to be a motion to file a supplemental pleading, because it appears Obenauer intended to "cover matters subsequently occurring but pertaining to the original cause." United States v. Vorachek, 563 F.2d 884, 886 (8th Cir. 1977) (citation omitted); see Doc. 6 at 4–6. See also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citation modified)).

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The decision whether to permit a party to supplement the pleadings is committed to the broad discretion of the district court." Favors v. Mike, No. 20-CV-00365 (SRN/DTS), 2021 WL 222935, at *5 (D. Minn. Jan. 22, 2021) (citing Minnesota Min. & Mfg. Co. v. Superior Insulating Tape Co., 284 F.2d 478, 481 (8th Cir. 1960)). Therefore, to the extent that Obenauer intended to file a motion to supplement in order to set forth new facts that have occurred since she filed her original complaint, that motion (Doc. 6) is granted, and the Court will consider the additional facts in Obenauer's motion when screening.[3]

[3] The Court only grants Obenauer's motion to supplement to the extent that it sets out new facts. It does not appear that Obenauer intended for this motion to set out new claims – instead, it appears that she plans to assert new claims

On February 12, 2026, Obenauer states that she was seen by Dr. Lori Lawson at Avera Neurology. Doc. 6 at 4. Obenauer alleges that Lawson "wanted to prescribe the Botox again but [they] had discussed how the DOC medical administration had rejected it before, so [Lawson] had ordered the gabapentin, to prevent [Obenauer from] not having any treatment at all." Id. Lawson placed an order for gabapentin, with Obenauer starting at 300 milligrams three times a day, and increasing over time to 600 milligrams three times per day. Id. Obenauer alleges that Health Services Administration approved the prescription for gabapentin, but at a lower dose than was originally prescribed by Lawson. Id. According to Obenauer, "[a]ll of these other medications that [she] was receiving, all this up and down dosing of the gabapentin, changing of medications with the gabapentin has made [her] migraine pain more intense and frequent." Id. Obenauer alleges that "[t]he current treatment/dosing of the gabapentin is not effective or helping the relief of the migraine pain[, b]ut the health services staff are saying that [Obenauer] need[s] to wait for [her] follow-up appointment with Avera Neurology for any changes to [her] medications that are prescribed for [her] migraine pain." Id.

Obenauer alleges that "[t]he Botox treatments were the most effective but the health service's [sic] administration rejects it based on cost[,]" which she claims is the "main issue" she is now dealing with. Id. at 5. Obenauer references a Medications With Abuse Potential policy, which she alleges results in certain medication being denied because of the "assumption that they have a high probability of being abused." Id. While Obenauer alleges that this policy explains why her gabapentin prescription was originally rejected, she claims that it "does not explain why the DOC has rejected the Botox besides cost." Id.

---

at a later time. See Doc. 6 at 3–4 ("There are quite a few of new claims that [Obenauer] plan[s] to add to this case after it clears screening that have occurred after filing this case.").

### 2. Facts Regarding Gender Dysphoria

Obenauer also states that she has been diagnosed with gender dysphoria. See, e.g., Doc. 1 at 16. Obenauer alleges that she requested various accommodations related to her gender dysphoria diagnosis, including laser hair removal, testosterone blocking medication, and hair-regrowth medication, but that these requests were denied by the Gender Non-Conforming Committee (GNC). Id. at 22. Obenauer claims that she was "not allowed" to attend the monthly meeting of the GNC committee in October of 2025, but that she did see the committee during the November meeting, where her requests were denied again. Id.; see also Doc. 1-1 at 37. Obenauer alleges that her requests to treat her gender dysphoria have been denied, and that it was instead recommended that she complete "6+ months of therapy centered on gender dysphoria." Doc. 1 at 18, 20, 22. Obenauer contends that she has satisfied this requirement because she has met with mental health for over two years. Id. at 20, 22. Obenauer claims that "[t]reatments of this condition are being provided to other offenders (specifically, IPL – laser hair removal) and they (the other offenders) are not being required to attend therapy centered on gender dysphoria for a specific amount of time." Id. at 16.

### 3. Injuries and Requested Relief

As injuries, Obenauer states that she has "chronic migraines on a daily basis, multiple times a day." Id. at 26. Additionally, Obenauer alleges that she has suffered multiple injuries due to defendants' "failure to treat the serious medical need of gender dysphoria[,]" including "[s]elf-harm instances, i.e. cutting/ hanging due to a major decline of [her] mental health." Id. She alleges that because the GNC Committee has "advised [her] therapist that [their] sessions must be centered on the disorder of gender identity[,]" Obenauer is not able to discuss with her therapist the "other mental health issues" that she has. Id. While Obenauer states that she is now

able to see her therapist twice a month instead of just once a month, she also claims that "[d]ue to the lack of treatment by the South Dakota Department of Corrections medical and mental health and their inconsistency of being able to meet with me [she] has suffered many self-harm instances and depressive episodes." Id.

Obenauer sues all defendants, all employed by the South Dakota Department of Corrections, in their individual and official capacities. Id. at 2–6. As relief, Obenauer requests $500,000 from each defendant, as well as various forms of injunctive relief including that the Court "grant effective medical treatment" from outside providers, "order the South Dakota Department of Corrections to stop denying medical treatment to offenders based on cost[,]" and "order the South Dakota Department of Corrections Mental Health Department to provide therapy to those in need of it more than once a month to receive it." Id. at 26.

**B. Legal Standard**

The Court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson, 551 U.S. at 94 ; Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights and pro se complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Obenauer's claims under 28 U.S.C. § 1915A.

## C. Legal Analysis

### 1. Official Capacity Claims for Monetary Damages

Obenauer sues all defendants in their official capacities and requests monetary relief. Doc. 1 at 2–6, 26. As employees of the South Dakota Department of Corrections, all defendants (Lamb,[4] Benting, Maturan, Goff, Vis, Haynes, Vanderaa, Timmerman, Black, and Krueger) are employees of the State of South Dakota. Id. at 2–6. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Obenauer's official capacity claims against defendants are construed as claims against the State of South Dakota. Id. While "[§] 1983 provides a federal forum to

[4] As stated above, Lamb is substituted for Wasko on the official capacity claims in accordance with Federal Rule of Civil Procedure 25(d).

remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. The State of South Dakota has not waived its sovereign immunity. Thus, Obenauer's claims against Lamb, Benting, Maturan, Goff, Vis, Haynes, Vanderaa, Timmerman, Black, and Krueger in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

**2. Individual Capacity Claims for Injunctive Relief**

Obenauer also sues defendants in their individual and official capacities for injunctive relief. Doc. 1 at 2–6, 26. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity."). Therefore, Obenauer's requests for injunctive relief against Wasko, Benting, Maturan, Goff, Vis, Haynes, Vanderaa, Timmerman, Black, and Krueger in their individual capacities are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Individual Capacity Claims for Monetary Damages and Official Capacity Claims for Injunctive Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Obenauer's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." Warfield v. Hettich, No. 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing Ex parte Young, 209 U.S. 123, 157 (1908)). Here, Obenauer seeks injunctions ordering defendants to provide her with "effective medical treatment" from a provider outside the DOC, to "stop denying medical treatment to offenders based on cost[,]" and to "provide therapy to those in need of it more than once a month[.]" Doc. 1 at 26. Obenauer has properly alleged claims seeking injunctive relief, as long as she alleges that her injuries are "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Warfield, 2025 WL 957769, at *9 (citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 816 (8th Cir. 2008)).

**a. First Amendment Claims**

Obenauer brings various claims under the First Amendment, including claims that Wasko, Benting, Goff, Vis, and Vanderaa have "[f]ail[ed] to meet and respond to infringement of rights[,]" Doc. 1 at 14–15, 18, 20, 23, and that Benting and Maturan have falsified certain statements, id. at 15, 16–17. Obenauer also states that Timmerman has violated the First Amendment by failing to "intervene" when policies or constitutional rights are violated. Id. at 24. While some of Obenauer's First Amendment claims are more appropriately evaluated under other constitutional protections, the Court evaluates Obenauer's purported First Amendment claims here for the sake of clarity.[5]

**i. Claims Regarding Grievances**

Obenauer brings First Amendment claims against Wasko, Lamb, Benting, Maturan, Vanderaa, and Haynes regarding the grievance process. See Doc. 1 at 14, 15, 17, 23. While Obenauer brings these claims under the First Amendment, claims regarding grievance processes are typically analyzed under the protections of the Fourteenth Amendment. See, e.g., Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam). "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." Id. (holding that a refusal to process grievances alone did not state a constitutional deprivation.). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections

---

[5] Obenauer brings claims against Wasko, Lamb, Benting, Goff, and Vis under the First Amendment that are related to her medical care. See Doc. 1 at 14, 15, 18, 20. But these claims are more appropriately evaluated under the Eighth Amendment, and this Court analyzes Obenauer's medical-care-related claims along with her other Eighth Amendment claims, discussed below.

envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).

Here, Obenauer alleges that a violation of her rights occurred because an appeal was rejected for the reason that the issue could not be appealed to the Secretary of Corrections, and because Wasko "refused to even look into/ investigate what is going on[.]" Doc. 1 at 14; Doc. 1-1 at 4. Additionally, Obenauer alleges that Benting "made no attempts to properly investigate the issues that [Obenauer] had brought to he[r] attention in the form of grievances[,]" and that there were "[u]nnecessary delays" in receiving responses to her grievances. Doc. 1 at 15–16. As for Maturan, Obenauer alleges that it is Maturan's "responsibility (as she is the grievance coordinator) to ensure the grievance procedure is being followed," and that Maturan has "rejected [Obenauer's] grievances for stating multiple issues in one grievance and grieving the same issue multiple times." Id. at 17. Obenauer contends that Vanderaa "has not followed up with the response to a grievance" Obenauer filed. Id. at 23. Lastly, Obenauer alleges that Haynes "is not consistent in his official responses to the plaintiff's gender dysphoria treatment needs/ requests."[6] Id.

But "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983[.]" King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (citing Buckley, 997 F.2d at 495)). Because Obenauer's claims relate to the failure to process and investigate her grievances, her claims fail under Buckley. Therefore, Obenauer's claims related to grievance process issues against Wasko, in her individual capacity for monetary damages; Lamb, in his official capacity for injunctive relief; and Benting, Maturan, Vanderaa,

[6] To the extent that Obenauer is intending to bring a claim against Haynes based on her disagreement with the treatment she is receiving, this claim is analyzed under the context of the Eighth Amendment. See infra at 19–21.

and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

**ii. Claims Regarding Prison Policy**

Liberally construing her complaint, Obenauer also brings claims under the First Amendment against Benting and Maturan for their failure to follow prison policy. See Doc. 1 at 15, 17, 24. Obenauer claims that Benting "willfully violate[d] due process and DOC policy" through delays in administrative procedure and responding to grievances. Id. at 15–16. Obenauer alleges that Maturan misrepresented prison policy regarding responses to Administrative Remedies by placing a response in the mail after the deadline created by prison policy had passed, and contends that "[p]olicies should be enforced to DOC employees just as much as the policies are enforced to offenders." Id. at 16–17.

But "[a] violation of prison policy alone does not give rise to section 1983 liability." Moore v. Rowley, 126 F. App'x 759, 760 (8th Cir. 2005); see also Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (recognizing that "there is no § 1983 liability for violating prison policy."). Therefore, Obenauer's claims based on a failure to follow DOC policies against Benting and Maturan, in their individual capacities for monetary relief and official capacities for injunctive relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

[7] Obenauer also alleges First Amendment claims based on allegedly false statements certain defendants made in their responses to Obenauer's grievances. See Doc. 1 at 15, 16–17 (alleging that Benting and Maturan made false statements in their responses to Obenauer's grievances). But claims that defendants made false statements in their responses to prison grievances are not cognizable under the First Amendment. Further, the grievances Obenauer attaches to her complaint suggest that, as opposed to false statements, there was instead a difference of interpretation regarding grievance procedures and certain statements made by defendants. See, e.g., Doc. 1-1 at 20–21, 23, 25.

### iii. Claims Against Timmerman

Obenauer alleges that Timmerman violated the First Amendment through "Rules and Regulations- Administrative procedure[.]" Doc. 1 at 24. But Obenauer does not provide any facts demonstrating how Timmerman's actions have resulted in an injury to Obenauer. See generally Doc. 1. Obenauer states that Timmerman is the DOC Prison Rape Elimination Act (PREA) Compliance Manager, and his "responsibilities include: ensuring PREA/ [gender non-conforming] policies are being met and followed, no retaliation is occurring towards any offenders, to intervene if and when wrongful actions/ decisions are made through the [gender non-conforming] committee, and to intervene if these actions violate offenders [sic] constitutional rights." Id. at 24. But other than providing Timmerman's job description, Obenauer does not point to any actual action or omission by Timmerman that resulted in a constitutional violation.[8] See id. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Therefore, Obenauer's claims against Timmerman in his individual capacity for monetary relief and his official capacity for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

[8] Obenauer alleges that "[i]f other defendants related to [Obenauer's gender non-conforming]/gender dysphoria needs being denied for invalid reasons and [Timmerman] does not act, he then is also at fault/ responsible for the alleged violations of constitutional rights." Doc. 1 at 24. As this Court understands her complaint, Obenauer is alleging that Timmerman could be liable if he did not intervene to prevent unconstitutional conduct. But this sort of hypothetical is not a cognizable claim.

**iv. Retaliation Claims**

Obenauer alleges that she was retaliated against for returning to prison so quickly after her release, which could be liberally construed as a First Amendment Retaliation claim. Doc. 1 at 23. To state a First Amendment retaliation claim, Obenauer must first show that she engaged in a protected First Amendment activity. Aldridge v. City of St. Louis, 75 F.4th 895, 898 (8th Cir. 2023) (citing Molina v. City of St. Louis, 59 F.4th 334, 338 (8th Cir. 2023)). Obenauer must then point to "an adverse action that would chill a person of ordinary firmness from continuing in the protected activity." Id. at 899 (citation modified). Lastly, Obenauer must show that the adverse action was "a 'but-for cause' of the injury [suffered.]" Beard v. Falkenrath, 97 F.4th 1109, 1119 (8th Cir. 2024) (alteration in original) (quoting Nieves v. Bartlett, 587 U.S. 391, 399 (2019)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." Nieves, 587 U.S. at 398 (emphasis in original).

Here, Obenauer does not allege that she engaged in a protected activity, or that she was retaliated against as a result of engaging in that protected activity. See generally Doc. 1. Instead, she contends that she "is being punished/ retaliated against with denial of proper/ effective medical care and treatment for returning to DOC custody as quick as she did." Id. at 23. Therefore, to the extent Obenauer intended to allege a First Amendment retaliation claim, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**b. Eighth Amendment Deliberate Indifference Claims**

Liberally construing her complaint, Obenauer alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Wasko, in her individual capacity only;

Lamb, in his official capacity only; and Benting, Goff, Vis, Haynes, Black, and Krueger, in their individual capacities for monetary damages and official capacities for injunctive relief.[9] Doc. 1 at 14–24. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that [s]he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is

[9] It does not appear from Obenauer's complaint that any of the defendants were directly involved in providing her care. See generally Doc. 1. Obenauer does state that she was seen by DOC Health Services employees Samatha Gottsleben, Doc. 1 at 12, 14, 19, 21; Doc. 1-1 at 3, and Dr. Rector, Doc. 1 at 12, 18, but neither of these individuals are named as defendants. See Doc. 1 at 2–6. Obenauer was also seen by outside providers Dr. Wong and Dr. Lawson, see id. at 12, but these providers are also not named as defendants. Id. at 2–6.

so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Beginning with the first prong, Obenauer alleges that her migraines and gender dysphoria are both "serious medical need[s.]" See Doc. 1 at 14, 15, 16, 18, 20. Additionally, she states that she has "chronic migraines on a daily basis, multiple times a day," and that she has suffered multiple injuries due to defendants' "failure to treat the serious medical need of gender dysphoria[,]" including "[s]elf-harm instances, i.e. cutting/ hanging due to a major decline of [her] mental health." Id. at 26. For purposes of screening, this Court assumes that migraines and gender dysphoria both constitute serious medical needs. The Court will now evaluate whether Obenauer has plausibly alleged the second prong.

**i. Claims Against Goff, Vis, and Haynes**

Obenauer brings Eighth Amendment deliberate indifference claims against Goff, Vis, and Haynes. See generally Doc. 1. Because Obenauer does not allege that these individuals were directly involved in providing her care, see id. at 18–23, this Court analyzes the claims against them in their supervisory capacities.

"[T]o be liable under § 1983 the medical defendants had to personally violate [the plaintiff's] rights or be responsible for a systematic condition that violates the Constitution." Saylor v. Nebraska, 812 F.3d 637, 645 (8th Cir. 2016) (citing Livers v. Schenck, 700 F.3d 340, 357 (8th Cir. 2012)). "To impose supervisory liability, other misconduct [by the medical defendants] must be very similar to the conduct giving rise to liability." Id. (citation omitted).

Here, Obenauer alleges that Goff has denied her requests for specific treatments for her gender dysphoria, and that he "has the ability to overturn the decision" to deny the prescription for gabapentin, but that he has failed to do so. Doc. 1 at 18. Obenauer also alleges that Vis "has complete ignorance to effective treatment for [Obenauer's] chronic migraines and the treatment of a serious medical need of the plaintiff," that Vis was involved in rejecting Obenauer's specific requests for treatment for gender dysphoria, and that the "[t]reatment that is being recommended for the chronic migraines is unfair, improper, and ineffective." Id. at 20. Lastly, Obenauer claims that Haynes is "the one that makes the decision of approval and denial of medications[,]" and that he is "recommending medications that were already prescribed and deemed ineffective for various reasons." Id. at 21.

But to establish an Eighth Amendment deliberate indifference claim, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Kulkay v. Roy, 847 F.3d 637, 643 (8th Cir. 2017) (quoting Est. of Rosenberg, 56 F.3d at 37). "Grossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Dulany, 132 F.3d at 1242 (quotation omitted). Here, each of Obenauer's claims against these defendants centers on her disagreement with the treatment she is receiving for both her migraines and her gender dysphoria. See generally Doc. 1. But "inmates have no constitutional right to receive a particular or requested course of treatment, and [prison medical professionals and nurses] remain free to exercise [their] independent medical judgment." Cannon v. Dehner, 112 F.4th 580, 587, 589 (8th Cir. 2024) (citation omitted). See also Meuir v. Greene Cnty. Jail

Emps., 487 F.3d 1115, 1118–19 (8th Cir. 2007) (recognizing that disagreement with a course of treatment does not constitute deliberate indifference (citation omitted)).

Although Obenauer requests specific treatments for her migraines and gender dysphoria, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Phillips v. Jasper Cnty. Jail, 437 F.3d 791, 795 (8th Cir. 2006) (quoting Est. of Rosenberg, 56 F.3d at 795) (providing that the fact that a plaintiff disagrees with their doctor as to the proper medication "does not establish deliberate indifference[]"); Johnson v. Leonard, 929 F.3d 569, 576 (8th Cir. 2019) (observing that a plaintiff's disagreement with receiving over-the-counter pain medications as opposed to prescription pain medications does not constitute deliberate indifference). Therefore, Obenauer's Eighth Amendment deliberate indifference claim against Goff, Vis, and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**ii. Claims Against Wasko, Lamb, and Benting**

Liberally construing her complaint, Obenauer also brings Eighth Amendment deliberate indifference claims against Wasko, Lamb, and Benting. Doc. 1 at 14–16. To allege an Eighth Amendment deliberate indifference claim against a nonmedical supervisor, a plaintiff "must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations or that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." Saylor, 812 F.3d at 644 (citation modified). When a supervisor does not have "'a reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [the plaintiff],' they cannot be held liable for cruel

and unusual punishment in violation of the Eighth Amendment." Id. (first alteration in original) (quoting Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008)).

Here again, Obenauer's claims against Wasko, Lamb, and Benting relate to Obenauer's disagreement with treatment decisions. See generally Doc. 1. Obenauer alleges that Wasko's conduct "constitutes deliberate indifference" because she was aware, through the grievance process, that Obenauer's requests for gabapentin had been denied.[10] Doc. 1 at 14. Obenauer alleges that Benting was also aware through the grievance process that Obenauer was "being denied medications that were making a significant difference towards her chronic condition[,]" but that Benting "has made no attempts to remedy any wrongdoing[.]" Id. at 15; see also id. at 16 (alleging that Benting "is aware of a serious medical need of chronic migraines and gender dysphoria that the plaintiff is suffering from[,]" and that Benting "has the ability to remedy this issue of refusal/denial of proper and effective medication and/or treatments[ but] refuses to act."). But, as discussed above, "inmates have no constitutional right to receive a particular or requested course of treatment, and [prison medical professionals and nurses] remain free to exercise [their] independent medical judgment." Cannon, 112 F.4th at 587, 589 (citation omitted). Obenauer does not provide facts showing that Wasko or Benting "knew of, participated in, or implicitly authorized, the mistreatment or nontreatment of [Obenauer], such as is necessary to maintain a claim of deliberate indifference under the Eighth Amendment." See Saylor, 812 F.3d at 644 n.5.

Further, Obenauer also does not allege that either Wasko or Benting, in their roles as Secretary of Corrections or Warden, respectively, were involved in making treatment decisions.

[10] In the section regarding her claims against Wasko, Obenauer alleges that Gottsleben "made the recommendation that [Obenauer] try other migraine medications . . . that were already deemed ineffective[,]" and states that "[t]his constitutes deliberate indifference." Doc. 1 at 14. The Court declines to construe this statement as alleging a claim against Gottsleben because Gottsleben is not named as a defendant. See id. at 1–6.

See generally Doc. 1. When a prison official does not have any personal involvement in providing medical care, and was "not involved in any of the treatment decisions made by the trained medical staff regarding the appropriate care [the plaintiff] should receive[,]" a plaintiff fails to state a cognizable deliberate indifference claim against those officials. Manning v. United States, No. 2:20-CV-00168-LPR-JTR, 2021 WL 11549344, at *3 (E.D. Ark. Mar. 29, 2021) (referencing Drake ex rel. Cotton v. Koss, 445 F.3d 1038, 1042–43 (8th Cir. 2006)); see also Camberos, 73 F.3d at 176 (providing that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability. Moreover, because [the treatment director and Warden] lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor[.]"). Therefore, Obenauer's Eighth Amendment deliberate indifference claim against Wasko, in her individual capacity for monetary damages; Lamb, in his official capacity for injunctive relief; and Benting, in her individual capacity for monetary damages and official capacity for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**iii. Claim Regarding Denial of Treatment Based on Cost**

In her request for relief, Obenauer requests that the Court "order the South Dakota Department of Corrections to stop denying medical treatment to offenders based on cost." Doc. 1 at 26; see also id. at 13 (stating that "[t]he DOC has made numerous statements of the requests, medications, and treatments being costly."); Doc. 6 at 5 ("[t]he Botox treatments were the most effective but the health service's [sic] administration rejects it based on cost."). The Court liberally construes this as an Eighth Amendment deliberate indifference claim against Wasko,

Lamb, Benting, Vis, Goff, and Haynes. As with her other Eighth Amendment claims, this claim fails because Obenauer has alleged no more than disagreement with treatment decisions.

As discussed above, "[a] plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied access to medical care." Dantzler v. Baldwin, 133 F.4th 833, 846 (8th Cir. 2025) (emphasis omitted) (quoting Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015)). But Obenauer provides no facts suggesting that the denial of Botox or other treatments constituted grossly incompetent or inadequate care. See generally Docs. 1, 6. While she alleges that Botox would be the most effective course of treatment, "inmates have no constitutional right to receive a particular or requested course of treatment, and [prison medical professionals and nurses] remain free to exercise [their] independent medical judgment." Cannon, 112 F.4th at 587, 589 (citation omitted). "The existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." Dulany, 132 F.3d at 1241.

Additionally, Obenauer's allegations that the DOC has rejected Botox and other treatments based on cost are conclusory. See Doc. 1 at 26; Doc. 6 at 5. See Iqbal, 556 U.S. at 678 (recognizing that "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." (citation modified)). Further, "the naked assertion that Defendants considered cost in [providing treatment] does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless

medical care, free of the cost constraints under which law-abiding citizens receive treatment." Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011).

"[T]he deliberate-indifference standard is difficult to meet. It requires a highly culpable state of mind approaching actual intent to harm the inmate." Joseph v. Wheeler, 144 F.4th 1111, 1113 (8th Cir. 2025). Here, Obenauer fails to provide more than conclusory statements and disagreement with treatment decisions. Therefore, her Eighth Amendment claim regarding the alleged denial of treatment based on cost against Wasko, in her individual capacity for monetary damages; Lamb, in his official capacity for injunctive relief; and against Benting, Goff, Vis, and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**iv. Claims Regarding Appointment Scheduling**

Obenauer brings Eighth Amendment deliberate indifference claims against Black and Krueger related to both defendants' alleged failure to schedule Obenauer for appointments with an outside provider. Doc. 1 at 24. "A plaintiff can show deliberate indifference in the level of care provided in different ways, including . . . showing a defendant intentionally delayed or denied access to medical care." Dantzler, 133 F.4th at 846 (emphasis omitted) (citation omitted). When considering claims regarding delays in treatment, "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." Id. at 847 (citation omitted). The Eighth Circuit has recognized that a prison official "delaying medical treatment for 'nonmedical reasons' may amount to deliberate indifference." Id. (emphasis and citation omitted).

Here, Obenauer alleges that she had been approved for an appointment with Avera Neurology and that Black was contacted to facilitate scheduling the appointment. Doc. 1 at 24. Black stated that "[s]he would contact the scheduling department and get the ball rolling" on scheduling an appointment, but Obenauer states that Black "refuses to and has failed to schedule said appointment." Id.; see also Doc. 1-1 at 43. Similarly, Obenauer alleges that Krueger is "responsible for scheduling appointments that have been approved[,]" and that Krueger "has been contacted multiple times to schedule [Obenauer's] Avera Neurology appointment." Doc. 1 at 24.

Obenauer provides that she ultimately was scheduled for an appointment with Avera Neurology. Doc. 6 at 4. But "even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs[.]" Dantzler, 133 F.4th at 847 (quotation omitted). Still, however, Obenauer must allege that Black and Krueger "actually knew of, but deliberately disregarded[]" her serious medical needs. Cannon, 112 F.4th at 586. But, other than conclusory allegations that Black has "refuse[d]" to schedule appointments and that Krueger has "proven deliberate indifference[,]" Doc. 1 at 24, Obenauer provides no facts that either Black or Krueger "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." Dantzler, 133 F.4th at 846 (quotation omitted); see generally Doc. 1. See also Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." (citation modified)). Therefore, Obenauer's Eighth Amendment deliberate indifference claim against Black and Krueger in their individual capacities for monetary damages and official capacities for injunctive and declaratory relief is

dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. Fourteenth Amendment Claims

In addition to the Fourteenth Amendment claims Obenauer brings related to the grievance process, discussed above, Obenauer also brings various other Fourteenth Amendment claims against Benting, Haynes, and Goff, see Doc. 1 at 16, 19, 23, which this Court will discuss in turn.

#### i. Claim Against Benting and Haynes

Liberally construing her complaint, Obenauer brings a Fourteenth Amendment equal protection claim against Benting and Haynes. See Doc. 1 at 16, 23. The Equal Protection Clause of the Fourteenth Amendment requires the government to "'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)). Generally, for a prisoner to prevail on an equal protection claim, she "must show that [s]he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." Patel, 515 F.3d at 815. "Suspect classifications include those such as race, alienage, gender, or national origin." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)).

It does not appear from Obenauer's complaint, however, that she is alleging she was treated differently based on a suspect classification, nor does she appear to base her claim upon a fundamental right. See generally Doc. 1. Instead, Obenauer appears to allege that she is treated differently from other inmates who have migraines and gender dysphoria. See id. at 16; see also Doc. 1-1 at 34 (stating that Obenauer's requests for certain treatments have been denied even

though they are "common request[s] by [gender non-conforming] offenders"). Because she is not alleging that she has been treated differently based on her membership in a protected class, this Court understands Obenauer to be alleging a "class of one" equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Nolan v. Thompson, 521 F.3d 983, 989–90 (8th Cir. 2008) (applying the class of one analysis to a prison setting).

In a "class of one" equal protection claim, the plaintiff must show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564; see also Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011)). "Identifying the disparity in treatment is especially important in class-of-one cases." Robbins v. Becker, 794 F.3d 988, 96 (8th Cir. 2015) (quoting Barstad v. Murray Cnty., 420 F.3d 880, 884 (8th Cir. 2005)). "A class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Id. (quoting Nolan, 521 F.3d at 990).

Beginning with her equal protection claim against Benting, Obenauer alleges that "[o]ther offenders receive the medications and treatments" that Obenauer has requested, but that "[w]ithout valid reason and/or any reason at all, [Obenauer] is being treated different than other offenders with similar issues/ conditions." Doc. 1 at 16. Obenauer alleges that "some offenders are receiving the medication of gabapentin even exceeding the prior limits that [Obenauer] previously received of 2x daily." Id. Obenauer claims that the different treatment "also applies to [her] diagnosis of gender dysphoria," and asserts that "[t]reatments of this condition are being provided to other offenders (specifically, IPL – laser hair removal) and they (the other offenders) are not being required to attend therapy centered on gender dysphoria for a specific amount of

time." Id. As for her equal protection claim against Haynes, Obenauer states that Haynes "has approved other [gender non-conforming] offenders T-blockers and IPL (laser hair removal) treatment without the alleged 6+ months of therapy centered on gender dysphoria." Id. at 23. Obenauer also claims that "many/ multiple offenders receive gabapentin for treatment of pain and other medical needs and do not get limited to certain limits on dose amounts. [Obenauer] has witnessed an offender receive 1200mg 3x daily." Id.

But even with the liberal construction afforded to pro se complaints, these statements are conclusory. See Robertson v. Kelly, No. 5:18CV00152 KGB/JTR, 2018 WL 8335490, at *3–4 (E.D. Ark. Dec. 14, 2018) (finding that plaintiff's "conclusory allegation—that 'every other inmate in punitive or suicide watch' received more favorable treatment than him—is insufficient to state a viable claim" at the screening stage). Further, the Supreme Court of the United States has declined to apply the class-of-one theory "against state action 'which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" Novotny v. Tripp Cnty., 664 F.3d 1173, 1179 (8th Cir. 2011) (alterations in original) (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008)); see also Flowers v. City of Minneapolis, 558 F.3d 794, 799–800 (8th Cir. 2009) (recognizing that the "class-of-one theory [is] a 'poor fit' in a context that involved discretionary decisionmaking" (citation omitted)). "Due to the inherently discretionary and individualized nature of the decisions made by state actors charged with managing and caring for prisoners, courts have recognized that prisoners' class-of-one claims alleging arbitrary treatment by prison officials generally are not cognizable under Engquist." McDonald v. Golden, No. 1:17CV00066 DPM/JTR, 2018 WL 4001278, at *4 (E.D. Ark. July 24, 2018) (collecting cases), report and recommendation adopted by 2018 WL 3999699 (E.D. Ark. Aug. 21, 2018).

Here, decisions regarding what specific medications and treatments a prisoner receives fall squarely within the types of state action "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments[]" and that the Supreme Court has found do not provide a basis for a cognizable class-of-one claim. Engquist, 553 U.S. at 603. See also Cartwright v. Krabbenhoft, No. 1:22-CV-025, 2022 WL 2293976, at *3 (D.N.D. May 2, 2022) (dismissing class-of-one claim on screening because "decisions regarding the appropriate course of treatment arguably involves discretionary decision making based on a vast array of subjective, individualized assessments."), report and recommendation adopted by 2022 WL 2291966 (D.N.D. June 24, 2022). Therefore, Obenauer's Fourteenth Amendment class-of-one claim against Benting and Haynes in their individual capacities for monetary relief and official capacities for injunctive relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**ii. Claim Against Goff**

Obenauer brings a Fourteenth Amendment due process claim against Goff, alleging that Goff "is aware of the deliberate indifference relating to medical care towards the plaintiff's severe medical needs[,]" and that Goff "has the ability to overturn the decisions under his command but he refuses to act in any way." Doc. 1 at 19. But Obenauer identifies no conduct distinct from the alleged denial of constitutionally adequate medical care. See generally id. Because the Eighth Amendment provides the explicit constitutional source of protection against deliberate indifference to a convicted prisoner's serious medical needs, Obenauer may not pursue the same allegations as a separate due process claim. See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that where a particular constitutional amendment provides an explicit source of

protection against the challenged government conduct, that amendment—not the more generalized notion of substantive due process—governs the claim). Because Obenauer's claim against Goff that she was denied constitutionally adequate medical care was evaluated above in the context of the Eighth Amendment, her due process claim related to her medical care is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Additionally, Obenauer alleges that Goff violated her rights under the Fourteenth Amendment because of allegedly "false statements" he made in his response to Benting. Doc. 1 at 19. Obenauer alleges that an Administrative Remedy Response was "signed by the Warden (Tabitha Benting) but it was [Goff] that stated it." Id.; see also Doc. 1-1 at 9. Obenauer alleges that the statement in this response that she "was unsure of the medications she was on and their dosages[,]" is false because she "stated in her intake physical that she had made an appointment when she was released with Avera Neurology for a day in the month of December, 2025." Doc. 1 at 19. But these statements are purely conclusory, and Obenauer does not allege how this conduct, if indeed by Goff, constitutes a Fourteenth Amendment violation. Therefore, her Fourteenth Amendment claim against Goff, in his individual capacity for money damages and official capacity for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**4. State-Law Negligence Claims**

Liberally construing her complaint, Obenauer also asserts state-law medical negligence and malpractice claims. See Doc. 1 at 19, 20, 23, 24 (referencing "tortious actions" in relation to her allegedly inadequate medical care). Before the Court considers whether Obenauer has alleged viable state-law claims, the Court must consider whether it has subject-matter

jurisdiction over her state-law claims. See Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (stating that district courts should "be attentive to a satisfaction of jurisdictional requirements in all cases." (citation omitted)); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A federal court has jurisdiction over two main kinds of cases: "diversity cases—suits between citizens of different States as to any matter valued at more than $75,000. See 28 U.S.C. § 1332(a). And they have power to decide federal-question cases—suits 'arising under' federal law. § 1331." Badgerow v. Walters, 596 U.S. 1, 8 (2022). Here, Obenauer has failed to establish that subject-matter jurisdiction exists over her state-law claims. First, there is no federal cause of action for medical malpractice or medical negligence, which is what this Court understands Obenauer to be alleging. See Davis v. Ennen Eye Ctr., No. 2:24-CV-02067-SOH-MEF, 2024 WL 4143335, at *4 (W.D. Ark. Aug. 8, 2024), report and recommendation adopted by 2024 WL 4142751 (W.D. Ark. Sep. 10, 2024); Smith v. Kendricks, No. 5:23-CV-05220-TLB-CDC, 2024 WL 1403102, at *2 (W.D. Ark. Mar. 12, 2024). Second, because Obenauer has alleged no facts that the defendants are citizens of a different state, see Doc. 1, she has failed to meet her burden of establishing diversity jurisdiction. See Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." (citation omitted)). Therefore, the Court would have to exercise supplemental jurisdiction to hear Obenauer's state-law claims.

Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). Nonetheless, the Court may

decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because this Court has dismissed Obenauer's § 1983 claims, the only claims within this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over Obenauer's state-law claims.

## III. Conclusion

It is therefore ORDERED:

1. That Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Kellie Wasko on the official capacity claims in accordance with Federal Rule of Civil Procedure 25(d).

2. That Obenauer's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

3. That the Clerk of Court shall send a copy of this order to the appropriate financial official at Obenauer's institution.

4. That the institution having custody of Obenauer is directed that whenever the amount in Obenauer's trust account, exclusive of funds available to her in her frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Obenauer's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

5. That Obenauer's claims against Lamb, Benting, Maturan, Goff, Vis, Haynes, Vanderaa, Timmerman, Black, and Krueger in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

6. That Obenauer's request for injunctive relief against Wasko, Benting, Maturan, Goff, Vis, Haynes, Vanderaa, Timmerman, Black, and Krueger in their individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Obenauer's claims related to grievance process issues against Wasko, in her individual capacity for monetary damages; Lamb, in his official capacity for injunctive relief; and Benting, Maturan, Vanderaa, and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8. That Obenauer's claims based on a failure to follow DOC policies against Benting and Maturan, in their individual capacities for monetary relief and official capacities for injunctive relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9. That Obenauer's claims against Timmerman in his individual capacity for monetary relief and his official capacity for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

10. That to the extent Obenauer intended to allege a First Amendment retaliation claim, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11. That Obenauer's Eighth Amendment deliberate indifference claim against Goff, Vis, and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

12. That Obenauer's Eighth Amendment deliberate indifference claim against Wasko, in her individual capacity for monetary damages only; Lamb, in his official capacity for injunctive relief only; and Benting, in her individual capacity for monetary damages and official capacity for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13. That Obenauer's Eighth Amendment claim regarding the alleged denial of treatment based on cost, against Wasko, in her individual capacity for monetary damages; Lamb, in his official capacity for injunctive relief; and against Benting, Goff, Vis, and Haynes, in their individual capacities for monetary damages and official capacities for injunctive relief, is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

14. That Obenauer's Eighth Amendment deliberate indifference claim against Black and Krueger in their individual capacities for monetary damages and official capacities for injunctive and declaratory relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

15. That Obenauer's Fourteenth Amendment class-of-one claim against Benting and Haynes in their individual capacities for monetary relief and official capacities for injunctive relief is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

16. That Obenauer's Fourteenth Amendment claims against Goff in his individual capacity for monetary damages and official capacity for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

17. That Obenauer's state-law medical malpractice and medical negligence claims are dismissed without prejudice for lack of subject-matter jurisdiction.

18. That all other claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED September 1, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE